IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| MILISSA JONES | ) |
| | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  2:07 CV273-WKW |
| | ) |
| FLYING J, INC. | ) |
| | ) |
| Defendant. | ) |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

The Plaintiff submits the following response in opposition to Defendant's motion for summary judgment. For the reasons set forth herein, the Defendant's motion should be denied.[1]

**Undisputed Facts**

1. On March 30, 2006, Ms. Jones reported to the Defendant, through counsel, that she was being sexually harassed by her immediate supervisor, Butch Jacobs. Staples Depo., Ex. 1. In so doing, Ms. Jones described that Jacobs had frequently directed sexually charged language

---

[1] Ms. Jones does not oppose the Defendant's motion in connection with Count One of her Complaint, which states a claim for hostile work environment. She does oppose the motion as it addresses Count Two for retaliation.

toward her and had touched her in offensive ways. Id.

2. In the same communication, Ms. Jones reported an incident in which Jacobs, Keith Staples and Kerry Lake, all company managers, had visited a strip club together while in Texas for company training. Id.; Staples Depo., p. 33; Ex. 4.

3. Kerry Lake not only visited the strip club but had been on stage while strippers danced for him. Lake is Staples' boss and was Ms. Jones' second line supervisor as District Manager. Staples Depo., Ex. 4; Jones Depo., p. 55-56.

4. Lake knew about Ms. Jones' allegation against him; he responded to it in a memorandum to Human Resources Manager Chris Bone on April 6th. Staples Depo., Ex. 4.

5. On April 6, 2006, Ms. Jones further reported through counsel that Jacobs tried to contact her multiple times with questions about why management was coming to their location. Staples Depo., Ex. 2.

6. On April 20, 2006, through correspondence faxed to the Defendant by counsel, Ms. Jones reported that she was being retaliated against in various ways after having reported Jacobs' conduct. Staples Depo., Ex. 3. All three reports were made to the Defendant's Senior, In-House Counsel, Kelly Lowrey. Staples Depo., Ex. 1-3.

7. The following day, on April 21, 2006, Ms. Jones was fired. Staples Depo., p. 32.

8. The reason given by the Defendant for the termination is excessive absenteeism from April 12, 2006 through April 21st. Staples Depo., p. 135 and Ex. 16.

9. Staples, District Accounting Manager and acting manager in charge for the subject location, testified specifically as to the reason for the termination: "She was not coming to work and was not communicating with me at all." Id., p 16.

10. The Defendant's Employee Termination Form for Ms. Jones states she was terminated due to "too many call in [sic] (seven days) ." Id., p. 135-137; Ex. 18.

11. Ms. Jones was never absent for seven days; rather she was only absent for six days total. Id., p. 72.

12. The only Defendant management employee whose name appears on Ms. Jones' Employee Termination form is Kerry Lake. Id., Ex. 18.

13. In addition to knowing about Ms. Jones' allegations regarding the strip club, Lake was aware at the time of Ms. Jones' termination that Jacobs had been fired for harassment, discrimination and creating a hostile environment because he fired Jacob's for those violations on April 9th,

pursuant to instructions from HR. Id., Ex. 5.[2]

14. Lake later wrote a memorandum to HR Director Jerry Beckman detailing Ms. Jones' absences while negatively remarking "I just don't see Melissa [sic] stepping to the plate to help at all." Id., Ex. 15.[3]

15. When asked which absenteeism policy Ms. Jones violated, Staples testified that the company handbook "...specifically states that employees should give notice." Id., p. 25.

16. In fact, during her absence from work, Ms. Jones communicated with Staples several times, including on April 12th, 14th, 18th and 19th. Id., p 17, 133.

17. Upper level Manager Mike Walton was also aware that Ms. Jones was out sick on the days in question. Id., p. 131.; Ex. 16.

---

[2] Prior to terminating Jacobs, Human Resource Manager Chris Bone sent an email to Manager Scott McMillan which he copied to Kelley Lowery and HR Director Jerry Beckman. The email stated:

> I have advised Kerry, based on the evidence, to terminate Butch for violation of the Company's policies against harassment and discrimination, as well as, creating a hostile environment.

Staples Depo., p. 105-106; Ex. 5.

[3] Ironically, the next to last day Ms. Jones worked was April 10th, <u>a day she had not been scheduled to work but had agreed to come in to help</u> due to the staffing shortage created in large part by the firing of her harasser. Staples Depo., p. 84.

18. Ms. Jones also communicated to Lake that she was out sick, that she had been to the doctor, that she was awaiting test results <u>and</u> that she would keep them apprized of the situation. Jones Depo., p. 84-85; Staples Depo., p. 16-17.[4]  There is no evidence Lake ever informed Ms. Jones that she was subject to discipline for her absences.

19. On Wednesday, April 19th, Ms. Jones informed Staples that she would not be able to work for the rest of the week but that she would call that Monday with more information. Staples Depo., p. 116, 118, 124. Staples never told Ms. Jones that she was subject to any form of discipline, nor had she ever received any prior reprimand, verbal or written, for absences (or anything else) at any time. Id., p. 10.

20. The following morning, Staples called Ms. Jones and told her she was terminated. Id., p. 32. During the conversation, Ms. Jones stated to Staples she was only out due to her medical condition. Id., p. 92. She also stated she had a medical excuse which could be brought to him. Jones Depo., p. 102-103.

21. At the time of her termination, Ms. Jones was a full time, exempt, salaried employee and was eligible for sick leave with pay, pursuant to

---

[4]Ms. Jones had learned that she was pregnant but that the pregnancy was in jeopardy and that she needed to be off of her feet. Jones Depo., p. 83-84.

the Defendant's own handbook. Id., p. 54-55; Ex. 19, p. 30. Yet, Staples never informed Ms. Jones of this eligibility prior to firing her. Id., p. 153.

22. The Defendant's own written absenteeism policy states: "We understand that emergencies and illness do arise making some absences unavoidable." Id., Ex. 19, p. 13. The Policy further states that "excessive absences, whether excused or otherwise may result in a performance evaluation by your manager. If the matter is not resolved, it will result in disciplinary action up to and including termination." Id.

23. Ms. Jones was never given a performance evaluation after the subject absences and never received the first disciplinary action for any manner of violation during her entire tenure with the Defendant. Id., p. 147-48.

24. The Defendant's policy further states "Employees who will be absent due to illness or injury <u>for more than five consecutive days</u> must complete an "Application for Leave of Absence form. The appropriate amount of sick leave can then be determined and approved." (Emphasis added) Id., Ex. 19, p. 31.

25. Ms. Jones was only absent for a period of four consecutive days counting the day she was terminated. Staples Depo., p. 154.

26. Staples concedes that an employee who is making multiple calls to

management and providing a manager with information that she has a medical problem and can provide a doctor's note is acting properly. Id., p. 155-56.

27. During the same time frame, specifically from April 18th-19th, the Defendant was conducting an investigation of Ms. Jones' report of sexual harassment in which at least 11 employees in the subject store were interviewed on the same premises where Staples had been working that week as the person in charge. Id., p. 42, 45, 78; Ex. 17.

28. Staples claims that he was not aware of the nature of the investigation nor Ms. Jones report of harassment at the time she was terminated. Id., p. 14-15.

29. At the time, Staples was responsible for operational responsibilities, apart from accounting, for Ms. Jones location "as it relates to day to day activity within the Plaza, whether it be merchandising, operation, safety requirements, things like that." Id., p. 9.

30. Staples was told there was an investigation at the Plaza by Kerry Lake. Id., p. 12.

31. When he terminated Ms. Jones, Staples was in consultation with senior counsel Lowery (to whom Ms. Jones' three reports were made), as well as the Human Resources Director Jerry Beckman, and District Manager

      Kerry Lake, who also signed Ms. Jones Termination Form. Id., p. 14.

32. The following exchange took place at Staples' deposition:

> Q: And you discussed with those folks the situation with Milissa prior to terminating her, and then at the time you terminated her, right?
>
> A: Yes, sir.

Staples Depo., p. 14.[5]

33. During the week of April 17th, the same week Staples fired Jones, he was present all week at the Plaza while manager Mike Walton conducted interviews of at least 11 employees in the management office of the Plaza as part of the Defendant's investigation into Ms. Jones' complaints. Id., p. 42; Ex. 17.

34. Staples testified that Lake was involved in the communications during the time before Ms. Jones was fired. Id., p. 23.

35. During this time, Staples had "regular conversations with Kerry [Lake] on a daily basis as to the events at [the Plaza]. Id., p. 27.

36. Staples called Ms. Jones to tell her she was fired at 9:15 a.m. Almost immediately thereafter, he was in contact with Beckman, Lake and Walton (who had conducted the harassment investigation) about the call.

---

[5] Staples later testified again that he spoke to Beckman about Ms. Jones' circumstances on April 20th, the day before he fired her. Staples Depo., p. 83-84.

      Beckman, in turn, passed the information on to senior counsel Lowery, who had received Ms. Jones complaints at the outset. Id., Ex. 10.

37. Critically, Staples, who claims no knowledge of Ms. Jones' allegations against Jacobs, fired both Jones and Jacobs. <u>Staples is the person who requested and filled out the Employee Termination Form for Butch Jacobs.</u> Id., p. 103 -104. The form filled out by Staples (and also signed by Lake), states Jacobs was fired for misrepresentation - during an investigation Staples claims to know nothing about. Id., Ex. 14.

38. Staples concedes that, as a manager who was running that Plaza, "...[I]t would be important for me to know – to understand the investigation and the outcome of the investigation. Id., p. 141.

### Argument

<u>Summary Judgment Standard</u>

    For purposes of the Defendant's motion, the Court must "view all the evidence and all factual inferences reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Maniccia v. Brown*, 171 F.3d 1364, 1367 (11th Cir. 1999), *citing Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1285 (11th Cir. 1997). Summary Judgment is only proper if the pleadings, depositions, and affidavits show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); <u>see</u>

*also* Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986).

The Controlling Law

To establish a prima facie case of retaliation, Ms. Jones must show: (1) she participated in protected activity under Title VII; (2) she suffered an adverse employment action; and (3) there is a causal link between the protected activity and the adverse action. *Wideman v. Wal-Mart Stores, Inc.,* 141 F.3d 1453, 1457 (11th Cir. 1998).

To establish a causal connection between the adverse action and the protected conduct, Ms. Jones must show "that the decision makers were aware of the protected conduct and that the protected activity and the adverse action were not wholly unrelated." *Gupta v. Florida Board of Regents,* 212 F.3d 571, 590 (11th Cir. 2000).

This awareness may be established by circumstantial evidence. *Goldsmith v. City of Atmore,* 996 F.2d 1155, 1163 (11th Cir. 1993). The Eleventh Circuit has "…plainly held that a Plaintiff satisfies this element if he provides sufficient evidence that the decision-maker became aware of the protected conduct, and that there was close temporal proximity between this awareness and the adverse employment action." *Farley v. Nationwide Mut. Ins.,* 197 F. 3d 1332 (11th Cir. 1999). See *Clover v. Total System Services,* 176 F.3d 1346, 1354 (11th Cir. 1999); *Goldsmith v. City of Atmore,* 996 F.2d 1155, 1163-64 (11th Cir. 1993).

If Ms. Jones establishes a prima facie case, the burden shifts to the Defendant to articulate a legitimate, non-discriminatory reason for the employment action. *Texas Dep't of Community Affiars v. Burdline,* 450 U.S. 248 (1981).

Once the Defendant meets its burden, Ms. Jones must present evidence that the articulated reason is merely pretext for intentional discrimination. *Elrod v. Sears, Roebuck & Co.,* 939 F.2d 1446 (11th Cir. 1991).

"Disbelief of the defendant's proffered reasons, together with the prima facie case, is sufficient circumstantial evidence to support a finding of discrimination. Therefore, … a plaintiff is entitled to survive summary judgment, … if there is sufficient evidence to demonstrate the existence of a genuine issue of fact as to the truth of each of the employer's proffered reasons for its challenged action." *Combs v. Plantation Patterns, Meadowcraft, Inc.* 106 F.3d 1519 (11th Cir. 1997).

"The burden to avoid summary judgment is not to show by a preponderance of the evidence that a defendant's proffered reasons for a challenged employment action were a pretext…Issues of fact and sufficiency of evidence are properly reserved for the jury. The only issue to be considered by the Judge at summary judgment is whether the plaintiff's evidence has placed material facts at issue." *Farley* at 1336 (citing *Hairston v. Gainesville Sun Publishing Co.,* 9 F.3d 913, 921 (11th Cir. 1993).

<u>Application of the Law to Ms. Jones' Case</u>

The Defendant's sole argument is that Ms. Jones has not come forward with

substantial evidence showing a causal relationship between her complaints about sexual harassment and her termination. Its primary, if not only, factual defense is Staples' self-serving testimony that he was not aware of Ms. Jones complaints of sexual harassment.

     Staples, who handled day to day operations of the Plaza, was aware of the investigation and its timing. He was aware that it involved Butch Jacobs who he knew to be the General Manager and immediate supervisor of Ms. Jones. He was present while numerous, if not all, the female employees were being questioned in the manager's office of the same Plaza he was working in all week. He had complete access to Kerry Lake who he spoke to on a daily basis. He was involved in one of the incidents complained about by Ms. Jones, along with Butch Jacobs and his boss, Kerry Lake. Before, during and after Ms. Jones' termination he was in consultations with the same HR and Legal managers to whom Ms. Jones complained and whom directed the investigation of her complaints. Those same managers were also communicating with each other about the investigation and the termination, as evidenced by their e-mails. Staples himself fired both Jacobs and Ms. Jones. The reason he himself wrote for the termination of Jacobs was that Jacobs had made misrepresentations in the same investigation he now claims to be ignorant of. Immediately after firing Ms. Jones, he not only passes on the details of her firing to Lowrey and Beckman, but also to Mike Walton whose only stated role in the

circumstances surrounding this case was to investigate Ms. Jones' claims.

Determinations as to Staples' credibility in light of these facts are properly left to the jury which could very reasonably find that his assertion is not worthy of belief.

Apart from Staples, it is clear that Kerry Lake, who signed the termination papers, was acutely aware of Ms. Jones' harassment complaints. Lake wrote an explanation of his actions at the strip club subsequent to Ms. Jones' allegations of the incident. Further, he fired Butch Jacobs at the direction of the HR department for the very conduct Ms. Jones reported - harassment, discrimination and for creating a hostile environment. Subsequently, he made negative comments about Ms. Jones to the HR Director and, days later, terminated her according to the Defendant's own Employee Termination Form.

To dismiss Ms. Jones case on the premise that neither Staples nor Lake was aware of her protected activity would require a basic failure to view all evidence and factual inferences reasonably drawn from the evidence in the light most favorable to Ms. Jones. Such a result would also mean that employers can shield themselves from liability merely through self-serving testimony that information was compartmentalized among managers so each can later claim no knowledge of an employee's protected activities.

In addition to the foregoing, Ms. Jones has proved extreme temporal proximity between her protected activities and her termination. Ms. Jones' last reports of

retaliation were made to the Defendant on April 20, 2006 and she was fired one day later.

Finally, Ms. Jones has provided substantial evidence of pretext. The Defendant claims she was fired for excessive absenteeism, yet its own policy is that she was entitled to sick leave with pay. Another of its policies does not even require a request form to be filled out for sick leave of less than five consecutive days - and Ms Jones was only absent for four. Yet another makes it clear that unforeseen illness is often excusable. Another calls for a performance evaluation or lesser discipline, neither of which was utilized for Ms. Jones - who had <u>never</u> been written up for anything over her entire tenure with the Defendant. Notably, Ms. Jones' termination form gives a different reason for termination - that she was absent for seven days, while the undisputed facts show Ms. Jones was never absent for seven days. Lastly, Staples testified about her specific violation - that she failed to communicate with him. Again, the undisputed facts show Ms, Jones communicated on multiple occasions with multiple managers, including Staples himself. One of those managers was Kerry Lake whom she told about her illness, her treatment by a doctor and the need to obtain test results before returning to work. Staples finally conceded in his deposition that by doing all those things, Ms. Jones did, in fact, act properly.

If the Defendant truly fired Ms. Jones for excessive absences, why did Staples

not simply inform her that she would be terminated if she missed another day?[6] A reasonable jury could find that the only reason Staples never mentioned that Ms. Jones was in danger of losing her job was because the Defendant was firing her regardless of absences and due to her ongoing complaints of harassment.

Based on the above evidence, all of which comes from the Defendant's own documents and the testimony of its own witness, Ms. Jones' could not have been fired for violation of any of the Defendant's absenteeism policies, as articulated. When analyzed in the light most favorable to Ms. Jones, the close temporal proximity of the protected activity and Staples' wholly unsupported, if not plainly contradicted testimony regarding his knowledge of Ms. Jones' complaints could easily lead a reasonable jury to find in Ms. Jones' favor on the issue of retaliation.

Conclusion

For the reasons set forth herein, the Defendant's motion should be denied.

Respectfully submitted,

*s/Adam P. Morel*
Counsel for the Milissa Jones

---

[6]There is no evidence Lake or any other manager did so either.

**OF COUNSEL**:

**LAW OFFICES OF ADAM MOREL, LLC**
517 Beacon Parkway West
Birmingham, AL 35209
*Telephone: (205) 252-8841*
*Facsimile: (205) 252-3727*

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing has been served via electronic and/or United States Mail, properly addressed and postage prepaid to:

All Attorneys of Record

This the 14th day of January, 2008.

*s/Adam P. Morel*
**OF COUNSEL**