## UNITED STATES DISTRICT COURT
## IN THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | | |
|---|---|---|
| MILISSA JONES, | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | |
| versus | * | CASE NO: 2:07CV273-WKW |
| | * | |
| FLYING J, INC. | * | |
| | * | |
| **Defendant**. | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## DEFENDANT'S REPLY BRIEF IN SUPPORT OF
## MOTION FOR SUMMARY JUDGMENT

### INTRODUCTION

Milissa Jones ("Plaintiff") filed this lawsuit against her former employer, Flying J Inc., claiming (1) she was subjected to sexual harassment by Butch Jacobs; and (2) that she was terminated in retaliation for having complained about the sexual harassment.[1]  In her first footnote contained in Plaintiff's Response, Plaintiff represents that she is not opposing Flying J's Motion for Summary Judgment with respect to the first claim regarding alleged sexual harassment.  Therefore, the sole issue left for decision is the claim that Plaintiff's employment was terminated in retaliation for her having complained that Butch Jacobs had sexually harassed her.

---

[1] With respect to the retaliation claim, Plaintiff also claimed that her co-workers shunned her and otherwise were unkind to her in retaliation for her having complained about Mr. Jacobs.  In its original memorandum, Flying J explained why it was entitled to summary judgment on that claim too.  However, Plaintiff offered no argument in opposition to Flying J's Motion for Summary Judgment on that particular claim regarding mistreatment by co-workers.

**APPLICABLE LAW**

In the Motion for Summary Judgment, Flying J set forth the applicable law for a retaliation claim. On pages 10 and 11 of Plaintiff's Response, Plaintiff sets forth the same law, so the parties are not in dispute about the law to be applied. More specifically, in order to establish a *prima facie* case of retaliation, Plaintiff must prove (1) she participated in protected activity under Title VII (meaning that she complained of sexual harassment); (2) she suffered adverse employment action (meaning she was terminated); and (3) there is a causal link between the protected activity and the adverse action (meaning that she was terminated because she complained of sexual harassment). Plaintiff is further correct when she states that she must prove the "decisionmakers" were aware of the protected conduct. On page 11 of her Response, Plaintiff is correct once again when she explains that, if she establishes a *prima facie* case, the burden of production shift to Flying J to articulate a legitimate non-discriminatory reason for the employment action. Once the defendant meets this burden of production, then the Plaintiff must present evidence that the articulated reason is merely a pretext for intentional discrimination (meaning the reason was unworthy to believe). However, it is important to understand that Flying J does not have to state a reason for terminating Plaintiff if Plaintiff cannot first establish the three elements of her *prima facie* case (she participated in protected activity, she suffered adverse employment action, and there was a causal link between the protected activity and the termination). *Gupta v. Florida Bd. of Regents*, 212 F.3d 571 (11th Cir.2000)

Flying J submits that Plaintiff cannot establish the third element of her *prima facie* case, and for that reason, summary judgment must be entered in its favor. The law

prohibits any consideration of the reason for termination considering that Plaintiff can not even establish a *prima facie* case.

## PLAINTIFF HAS PRESENTED NO SWORN EVIDENCE TO LINK HER DISCHARGE WITH HER COMPLAINT THAT MR. JACOBS SEXUALLY HARASSED HER.

Recognizing that she must establish this causal link between her complaint of harassment and her termination, Plaintiff cites deposition testimony and other documentary evidence in an effort to suggest that the decisionmaker must have known Plaintiff complained of sexual harassment because other company executives knew; that in essence is Plaintiff's argument in opposition to the motion for summary judgment. The problem for Plaintiff is that hunches and supposition are not sufficient evidence to establish the causal nexus.

In support of its motion, Flying J attached deposition testimony from District Accounting Manager Keith Staples where he testified that he was the person who made the decision to terminate Plaintiff. Staples Depo., p. 13. Flying J also presented excerpts from Mr. Staples deposition testimony that establishes he did not know Plaintiff had complained that Butch Jacobs had sexually harassed her. Staples Depo., pp. 14-15, 43-44. Nowhere in Plaintiff's Response does she present evidence to contradict Mr. Staples testimony - - she presents no inconsistent testimony from Mr. Staples on that score, nor does she present affidavits or deposition testimony from other people who would attest that Mr. Staples did in fact know that she had made the complaint of sexual harassment. Therefore, Mr. Staples' testimony stands unrebutted, and Plaintiff cannot establish the causal nexus. Plaintiff characterizes Mr. Staples' testimony as "self-serving," but he is not a defendant in this case. Just because his testimony maybe helpful to the defense does not mean that it is untrue. Plaintiff takes great effort in highlighting that other

Flying J managers knew Plaintiff had complained of sexual harassment but none of that establishes that Mr. Staples knew.

In paragraph one of the section of Plaintiff's Response entitled "Undisputed Facts," Plaintiff states that she "reported to the defendant through counsel that she was being sexually harassed by her immediate supervisor, Butch Jacobs." It is true that Plaintiff through her lawyer sent a letter of complaint to Flying J's General Counsel's Office in Ogden, Utah that Butch Jacobs had sexually harassed her, but that report cannot be linked to Keith Staples. It is misleading to state that she reported to "the defendant," without specifying to whom she complained. The evidence shows that the report was to Flying J's General Counsel, and not to Mr. Staples, Plaintiff's imprecise and ambiguous paragraph 1 notwithstanding. Jones Depo., p. 70; Exhibit "4" to Jones Depo.

In paragraph two of the "Statement of Facts," Plaintiff states that Keith Staples and others attended a strip club together while in Texas for company training, but because Plaintiff has dropped her sexual harassment claim, the details of this alleged outing are irrelevant to the claim for retaliation. The fact that Mr. Staples attended the club did not mean that he was later told that Plaintiff had complained of sexual harassment.

In paragraph four, Plaintiff states that General Manager Kerry Lake knew about Plaintiff's allegations against him, but that does not prove that Mr. Staples knew Plaintiff had complained to Flying J of sexual harassment.

In paragraph five, Plaintiff states that she further reported through counsel that Mr. Jacobs tried to contact her multiple times with questions about why management was

coming to the location, but again, Plaintiff does not explain to whom this was reported. It was not reported to Keith Staples, and Plaintiff has no evidence to the contrary.

In paragraph six of the "Statement of Facts," Plaintiff states that reports of retaliation were made to Flying J in-house counsel, Kelly Lowrey. However, this assertion of fact does not establish the causal link, as Ms. Lowrey is not Mr. Staples.

In paragraph 12, Plaintiff states that, "the only defendant management employee whose name appears on Ms. Jones' employee termination form is Kerry Lake," suggesting that it was Kerry Lake who actually terminated Plaintiff. But, once again, that statement does not include all of the salient testimony on that point, and thus, the assertion is grossly misleading. As Plaintiff's counsel learned from questioning Mr. Staples at his deposition, Plaintiff's termination form (Exhibit 18 to the Opposition Memorandum) shows that the "requestor" of the termination form was "bk Tyson." According to Mr. Staples deposition testimony, "Tyson" represents the location of that Travel Plaza (Tyson, Alabama), and "bk" indicates that someone who works in bookkeeping requested this paperwork. Staples Depo., pp. 135-36. As Mr. Staples was the District Accounting Manager, he testified that "bk" meant someone who worked for him actually made the request of this termination paperwork. Staples Depo., p. 136. Upon further questioning by Plaintiff's counsel, Mr. Staples explained that he was the one who terminated Plaintiff and that was indicated by "gm-tyson" on the form. Staples Depo., pp. 136-37. Mr. Staples explained that he was acting general manager at the time that this was requested. Staples Depo., pp. 136-37. So although his name did not appear, the letters signified that the approval was made by him. It is true that Kerry Lake's name also appears on the form, but according to this form, he was not consulted about it

because under the column entitled "status," it shows that Mr. Lake was "skipped." However, the status column indicates that the GM (General Manager) from Tyson (Mr. Staples was acting GM in Mr. Lake's absence) actually "approved" that termination.

There should be no doubt that it was Mr. Staples who made the decision to terminate Plaintiff, in light of the testimony that Plaintiff's counsel elicited during Mr. Staples deposition:

> Q.    And you also were the person that fired her, correct?
>
> A.    That's correct.
>
> Q.    And you also were the person who approved this termination form, correct?
>
> A.    That's correct.

Staples Depo., p. 137.

Paragraph 13 of the "Facts" section also is misleading because it suggests that Plaintiff claims in this lawsuit she was retaliated against because she complained of events occurring at the strip club. Evidently, Plaintiff means to suggest in her opposition memorandum that Mr. Lake knew Plaintiff had complained about the strip club incident that involved him and that Mr. Lake was involved in Plaintiff's termination, thus trying to link the two. Such argument is misleading because Plaintiff is not suing Flying J for retaliation because of anything Kerry Lake allegedly did, but rather is suing Flying J because of what Butch Jacobs allegedly did to her. Plaintiff was not even employed by Flying J at the time Mr. Lake and others ventured to the strip club. Jones Depo., p. 56. More specifically, in paragraph 10 of Plaintiff's complaint, she alleges that Plaintiff was subjected to a sexually hostile work environment due to the misconduct of Butch Jacobs, the defendant's general manager at the location in which the Plaintiff was employed.

Plaintiff's lawsuit alleges that Mr. Jacob's conduct included unwelcome, severe and pervasive sexually charged comments and touchings directed at the Plaintiff. Plaintiff's Complaint ¶10. In paragraph 11 of Plaintiff's Complaint, she explains that it was the conduct of Mr. Jacobs she was complaining about, making no mention of Kerry Lake:

> On or about March 30, 2006, the Plaintiff opposed what she reasonably believed unlawful conduct on the part of Jacobs and the defendant by reporting Jacobs' sexual misconduct to the defendants' corporate office.

Paragraph 13 of the "Facts" section is misleading because it suggests (though does not state expressly) Mr. Lake knew at the time Plaintiff was terminated that she had complained about Mr. Jacobs' conduct. When the evidence is examined more closely, that suggestion is specious at best, and does not constitute evidence to withstand summary judgment.

It is true that Mr. Lake was instructed to terminate Mr. Jacobs as a result of his mistreatment of Plaintiff, but that alone does not mean Mr. Lake knew Plaintiff had been the one to complain about Mr. Jacobs thus prompting the investigation. All Plaintiff has established through evidence is that there was an investigation of Mr. Jacobs that Mr. Lake was aware of, but Plaintiff has produced no sworn evidence that Mr. Lake actually knew what prompted the investigation (as far as he knew, one of Plaintiff's co-workers could have complained, or one of Plaintiff's managers could have initiated the investigation). But regardless of whether or not Mr. Lake knew that Plaintiff had complained, that knowledge would have no bearing on Plaintiff's claim of retaliatory discharge unless Mr. Lake was the one who terminated her employment. As explained above, it was Keith Staples who made the decision to terminate Plaintiff.

In footnote 2, Plaintiff references Exhibit 5 to Keith Staples' Deposition, which shows that Human Resources Manager Chris Bone sent an e-mail to manager Scott McMillan, copying Kelly Lowrey and HR Director Jerry Beckman and stating that "I have advised Kerry, based on the evidence, to terminate Butch for violation of the company's policies against harassment and discrimination, as well as, creating a hostile environment."  But that e-mail does not explain Mr. Lake was advised that it had been Plaintiff herself who made a complaint against Mr. Jacobs that had prompted that investigation, nor does that e-mail establish that Mr. Staples knew Plaintiff had complained that Mr. Jacobs sexually harassed her.

In paragraph 28, Plaintiff correctly states that "Staples claims that he was not aware of the nature of the investigation nor Ms. Jones' report of harassment at the time she was terminated."  Plaintiff cites pages 14-15 of Mr. Staples' deposition, but a more comprehensive account would include pages 12-15 - - showing that Mr. Staples did not discharge Plaintiff in retaliation for her complaint of sexual harassment:

> Q.  And the reason for his involuntary termination was that the company found that Ms. Jones' allegations of sexual misconduct on the part of Mr. Jacobs were at least in part true?
>
> A.  I have no knowledge of that.
>
> Q.  You don't know that?
>
> A.  No, sir.
>
> Q.   Well, what is your information about why Mr. Jacobs was fired?
>
> A.      During that period I was told there was an investigation.
>
> Q.  And were you told anything about why he was fired?

A.  No, sir.

Q.  What were you told about the investigation?

A.  I was told there was an investigation at the Plaza.  I'm referring to that time period.

Q.  All right.

A.  I was told there was an investigation at the Plaza and that, you know, it would be business as usual until the investigation was complete.

Q.  What were you told the investigation was about?

A.  I wasn't given any information about the investigation.

Q.  So you weren't told that the investigation was about sexual harassment?

A.  No, sir.

Q.  You were the person that  communicated to Ms. Jones that she was terminated, correct?

A.  Yes, sir.

Q.  Who made the decision to terminate her?

A.  I did.

Q.  And you did that in consultation with the human resources director, correct?

A.  Yes, sir.

Q.  And also in consultation with the senior counsel, Kelley Lowery, correct?

A.  Yes, sir.

Q.  You also kept in the loop Kerry Lake; is that right?

A.  Yes, sir.

Q.  Remind me the name of the HR director, Jerry?

A.  Beckman.

> Q.   Beckman.  And you discussed with those folks the situation with  Milissa prior to terminating her,  and then at the time you terminated her, right?
>
> A.  Yes, sir.
>
> Q.   All right.  You knew that Ms. Jones had made sexual harassment allegations, correct?
>
> A.  No, sir.
>
> Q.  You didn't know that?
>
> A.  No, sir, I didn't.
>
> Q.  Ms. Lowery didn't tell you that?
>
> A.  No, sir.

Staples Depo., pp. 12-15.

In Paragraphs 30, 31 and 32 Plaintiff implies (but does not prove with evidence) that Flying J management must have told Mr. Staples that Plaintiff had made a complaint of sexual harassment.  Such implication does not withstand scrutiny.  For example, in paragraph 30, Plaintiff writes "Staples was told there was an investigation at the Plaza by Kerry Lake."  Plaintiff has no sworn evidence that Mr. Staples was told what kind of investigation it was or what prompted the investigation and thus, Plaintiff has not proven evidence that Mr. Staples knew Plaintiff had complained.  In fact, the following two pages of testimony make plain that Mr. Staples was not aware of the nature of the investigation (something yet again Plaintiff has failed to highlight for the court):

> Q.   Alright.  Were you involved in any investigation that was performed by the company with respect to any issue brought up by the Ms. Jones?
>
> A.   No, sir.
>
> Q.   Do you know whether there was any such investigation?

A.    There was an invest - - I was told that there was an
investigation when I was, you know, first asked to go down
there.  But I was never privy to who it was, or what was
going on, or what the problem was, or anything like that.

Q.    Who told you there was an investigation?

A.    Kerry.

Q.    He told it was a Butch, but he didn't say what it was
about?

A.    No sir.

Q.    Is that correct?

A.    That's correct.

Q.    Were you interviewed as part of that investigation?

A.    No sir.

Staples Depo., pp. 43-44.

In paragraph 31, Plaintiff writes that "when he terminated Ms. Jones, Staples was

in consultation with senior counsel Lowrey (to whom Ms. Jones' three reports were

made), as well as the Human Resources Director Jerry Beckman, and District Manager

Kerry Lake, who also signed Ms. Jones termination form."  However, that statement still

does not establish that anyone, whether it be Ms. Lowrey, Mr. Beckman, or Mr. Lake,

informed Mr. Staples that Ms. Jones had made a complaint of sexual harassment - - only

that he was in "consultation with them" without saying what the consultation concerned.

In paragraph 32, Plaintiff includes the following question and answer from Mr.

Staples' deposition:

Q.    And you discussed with those folks the situation
with Milissa prior to terminating her, and then at the time
you terminated her?

A.    Yes, Sir

Staples Depo., p. 14.

What Plaintiff fails to do, yet again, is include the rest of Mr. Staples' testimony. This series of three questions reads as follows (something Plaintiff evidently did not want to highlight for the court):

> Q.    Beckman. And you discussed with those folks the situation with Milissa prior to terminating her, and then at the time you terminated her, right?
>
> A.    Yes, sir.
>
> Q.    Alright.  <u>You knew that Ms. Jones had made sexual harassment allegations, correct?</u>
>
> A.    <u>No, sir.</u>
>
> Q.    <u>You didn't know that?</u>
>
> A.    <u>No, sir.  I didn't.</u>

Staples Depo., pp. 14-15.

Obviously, Plaintiff knew that the answer to those next two questions showed that Mr. Staples did not know that Plaintiff had complained of harassment, something that is fatal to Plaintiff's retaliation claim.

In footnote 5, Plaintiff implies or suggests that Mr. Staples must have known that Ms. Jones had reported sexual harassment because "Staples later testified again that he spoke to Beckman about Ms. Jones' circumstances on April 20th, the day before he fired her."  But a full reading of those deposition pages reveals that the "circumstances" that Mr. Staples referred was her work schedule, not anything having to do with any complaint of sexual harassment:

> Q.    (By Mr. Morel) But I mean, as you sit here now, you know, what you've learned is that you were telling her you need to come in, we don't have a GM, <u>you've got to work more hours to help us</u> -

A.     <u>Well, not more hours, just work the hours.</u>

Q.     <u>Well, what hours did she not work that she was supposed to work, just the days you told me?</u>

A.     Well, from my outline here, <u>there was quite a few hours where it was off the schedule so it was</u> - - you know, we can't operate come and go as you want.

Q.     But you already have said that you never had any information about what the general manager had told them to do for that week, right?

A.     I pulled my own records, that's correct.

Q.     Well, let's not - - I mean, you didn't have any information from the general manager, right? ***

Q.     (By Mr. Morel)  You never got any information from the general manager?

A.     No, sir.

Q.     Alright.  So as far as you knew, she was doing exactly what she was supposed to do pursuant to the directions of the general manager?

A.     That's correct.

Q.     Alright.  <u>And as far as you knew, she was proceeding - - as far as the day she worked compared to the schedule, the public schedule, she was proceeding as had been the custom of all the managers in that Plaza for some time?</u>

A.     <u>It was my understanding everybody was working our published corporate schedule.</u>

Q.     Was that your assumption, or was that your understanding?  You just assumed that was happening at the Plaza?

A.     I assumed that was happening, right.

Q.     But you didn't know whether in fact it was going on?

A.     That is correct.

Q.    All right.  For all you know, she could have been working off the published schedule, but according 9    to the last four months of custom at the Plaza?

A.    That's possible.

Q.    And what did you do to determine whether or not that was the case, before you fired her?

A.    My decisions, sir, were based on the recent events of those last couple of weeks.  The other information that I viewed there and printed off was simply informational.

Q.    You spoke with Jerry Beckman, the director of HR, about Ms. Jones' circumstances on April 20th, the day before you fired her, correct?

A.    Yes, sir.

Staples Depo., pp. 80-84. (emphasis supplied.)

In Paragraph 33 Plaintiff implies that Mr. Staples must have known that Plaintiff initiated a sexual harassment investigation because manager Mike Walton conducted interviews of at least 11 employees.  Such slick wordsmithing gives the misleading impression that there was evidence that Mr. Walton or others present during the investigation informed Mr. Staples that Ms. Jones had made the complaint.  But there is no testimony on page 42 or through Exhibit 17, (cited evidence in paragraph 33) to make that causal link.

In Paragraph 31 Plaintiff states that Kerry Lake "signed" Plaintiff's termination form.  That statement is not true.  Mr. Lake's name appears in typewritten form on that document (not his signature), but the document noted that Mr. Lake was "skipped." "Skipped" means that Mr. Lake was not consulted about this termination.  *See* Declaration of Keith Staples, Ex. A.  It is wrong for Plaintiff to suggest that Mr. Lake actually signed the document as if he knew of it, when that is not true.

In paragraph 34, Plaintiff states that "Staples testified that Lake was involved in the communications during the time before Ms. Jones was fired." But that statement does not establish that Mr. Lake or Mr. Staples knew that Plaintiff had asserted a claim of sexual harassment, nor does that statement explain what the communications were. Similarly, paragraph 35 states that Mr. Staples had "regular conversations with Kerry [Lake] on a daily basis as to the events at the [the Plaza]." But that testimony does not establish what those conversations were about, so it cannot establish the causal nexus between the complaint Plaintiff made and her termination by Mr. Staples.

Paragraph 36 explains that Mr. Staples reported to Mr. Beckman, Lake and Walton, who passed the information onto counsel Lowrey, that Jones had in fact been terminated. So what? The fact that Mr. Staples would report to other management that an employee has been terminated does not mean that he terminated her because she had made a complaint, irrespective of what the people he reported to would have known before the termination.

In paragraph 37 Plaintiff recounts the testimony that Mr. Staples was the person who requested and created the employee termination form for Butch Jacobs. More precisely, Mr. Staples testified that he never saw the printed form, but had only created the electronic termination form. Staples Depo., p. 104-105. Nevertheless, it is further important to understand that Mr. Staples testified that someone told him to create the form, and that it was not his decision. Staples Depo., p. 106. Plaintiff implies that Mr. Staples must have been the one who decided to terminate Mr. Jacobs because Mr. Jacobs was fired for misrepresentation during an investigation. But that testimony does not establish that Mr. Staples knew what the investigation was about, or more important, who

initiated the investigation.  Flying J mentioned in its original memorandum in support of

the motion for summary judgment that Mr. Staples did know that an investigation was

going on, but did not know what it was about or who initiated it:

> Q.    Do you agree with Mr. Bone's statement where he says in the second paragraph, second sentence, "I have advised Kerry based on the evidence to terminate Butch for violation of the company's policies against harassment and discrimination, as well as creating a hostile work environment," or "hostile environment."  I'm sorry.  It doesn't say work.
>
> A.    I'm sorry.  I was reading the paragraph.  What was your question?
>
> Q.    Do you agree with his statement that I read?  Is that an accurate characterization of what occurred?
>
> A.    That I would not know.
>
> Q.    And your testimony is that you requested and filled out the termination paperwork for Mr. Jacobs, but that you don't know whether this statement is accurate or not?
>
> A.    That's correct.  Yes sir.  I was told to complete this document, the electronic form.

Staples Depo. pp., 105-106. (emphasis supplied)

## PLAINTIFF HAS NOT ESTABLISHED A PRIMA FACIE CASE SO THE REASON FOR HER TERMINATION IS NOT RELEVANT

In paragraphs 15 and 16 under Plaintiff's "Facts" section, Plaintiff attaches Mr.

Staples testimony about the reason he terminated her employment.  Plaintiff argues that

she communicated with Mr. Staples on multiple occasions about her return to work.  In

paragraphs 17-26, Plaintiff also challenges the reason given for her termination - -

arguing that the reason is pretextual.  But unless and until Plaintiff can establish a *prima

facie* case, the reason for her termination is irrelevant. *Gupta v. Florida Bd. of Regents*,

212 F.3d 571 (11th Cir.2000). It is Flying J's position that Plaintiff cannot establish a

*prima facie* case, so, as a matter of law, the court must not even consider the reason for her termination.

## PLANITIFF HAS ASSERTED NO CLAIM PERTAINING TO SICK LEAVE OR DISABILITY

Paragraphs 20 and 21 seem to suggest that Plaintiff was unfairly denied eligibility for sick leave pay due to her alleged medical condition. This argument is a red herring because Plaintiff has not asserted any claim under the Family Medical Leave Act or the Americans with Disabilities Act.

## CONCLUSION

The gist of Plaintiff's argument is that other Flying J managers must have informed Keith Staples of Plaintiff's sexual harassment complaint because some of these other managers knew of her complaint before Mr. Staples fired Plaintiff. But supposition on the Plaintiff's part does not constitute evidence to establish that Mr. Staples had actually been informed of her complaint. It is Plaintiff's burden to establish this causal link, so summary judgment must be entered as she has failed to do so. Flying J respectfully suggests that a trial would be a waste of time, because the testimony would be the same and Flying J would urge a motion for judgment as a matter of law on this very same theory.

Respectfully submitted,

/s/Olivia S. Regard
Olivia S. Regard (La. Bar No. 27114)
**Jones, Walker, Waechter, Poitevent,
    Carrère & Denègre, L.L.P.**
500 Dover Boulevard, Ste. 120
Lafayette, Louisiana 70503
Telephone: (337) 406-5613
Facsimile: (337) 406-5620
Email: oregard@joneswalker.com

and

Robert B. Worley, Jr. (La. Bar No. 17212)
**Jones, Walker, Waechter, Poitevent,**
 **Carrère & Denègre, L.L.P.**
201 St. Charles Avenue, 47th Floor
New Orleans, Louisiana  70170-5100
Telephone:  (504) 582-8000
Facsimile:   (504) 582-8015
Email: rworley@joneswalker.com

and

Carole G. Miller
**Maynard Cooper & Gale, P.C.**
1901 Sixth Avenue North
2400 AmSouth/Harbert Plaza
Birmingham, Alabama 35203
Telephone: (205) 254-1096
Facsimile: (205) 254-1999
Email: cmiller@maynardcooper.com

*Counsel for Defendant, Flying J Inc.*

### CERTIFICATE OF SERVICE

I hereby certify that on this 28th day of January, 2008, a copy of the foregoing pleading was filed electronically with the Clerk of Court to be served by operation of the Court's electronic filing system.

/s/Olivia S. Regard

UNITED STATES DISTRICT COURT
IN THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

MILISSA JONES,        *
                          *
     Plaintiff,      *
                          *
versus              *     **CASE NO: 2:07CV273-WKW**
                          *
FLYING J, INC.       *
                          *
     Defendant.    *
                          *

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## DECLARATION OF KEITH STAPLES

Pursuant to 28 U.S.C. § 1746, I, Keith Staples, declare under the penalty of perjury that the following statements are true and correct to the best of my recollection, information, and belief and are based on my personal knowledge:

1.     I am an adult resident of the state of Georgia.

2.     Since November 2005, I have been employed by Flying J Inc. ("Flying J"), as the District Accounting Manager in Jackson, Georgia.

3.     Flying J operates a travel plaza in Tyson, Alabama.

4.     The district for which I serve as the District Accounting Manager encompasses the Flying J Travel Plaza in Tyson, Alabama.

5.     During all relevant time periods, I was present at the Hope Hull, Alabama Travel Plaza and had the authority to discipline employees, up to and including termination of employment.

6.     On April 21, 2006, I terminated Milissa Jones for excessive absenteeism.

{L0036197.1}



7.    In my capacity as District Accounting Manager I am familiar with the termination form used by Flying J and the termination form for Milissa Jones attached hereto as Exhibit 1.

8.    Exhibit 1 indicates that the requestor of the termination form was "bk Tyson."

9.    The notation "Tyson" is a reference to the location of the Tyson, Alabama Travel Plaza.

10.    The notation "bk" on the termination form indicates that someone who works in bookkeeping requested the termination form.

11.    The employee in bookkeeping who requested the termination form works under me in my capacity as District Accounting Manager.

12.    At the time the termination form was requested, I was acting general manager of the Tyson, Alabama Travel Plaza.

13.    The notation "gm-tyson" on the termination form signifies that the general manger of the Tyson, Alabama travel plaza approved Ms. Jones' termination.

14.    I did not consult with Kerry Lake in making the decision to terminate Ms. Jones. This is evidenced by the bottom portion of the form wherein Kerry Lake's name appears. Under the column entitled "status," it shows that Mr. Lake was "Skipped."

15.    The status column further indicates that the general manger from Tyson "approved" Ms. Jones' termination. As acting general manager at that travel plaza, the column refers to me not Kerry Lake.

Executed this _25ᵗʰ_ day of January, 2008 at Jackson, Georgia.

_[signature]_

Keith Staples