IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| MILISSA JONES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:07-cv-00273-WKW |
| | ) | |
| FLYING J, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

This cause is before the court on the Motion for Summary Judgment (Doc. # 18) filed by Defendant Flying J, Inc. ("Flying J"). Plaintiff Milissa Jones ("Jones") brings sexual harassment and retaliation claims against her former employer, Flying J, under Title VII of the Civil Rights Act of 1964 ("Title VII"). For the reasons set forth below, the summary judgment motion is due to be granted in part and denied in part.

**I. FACTS AND PROCEDURAL HISTORY**

Viewing the parties' evidentiary submissions in a light most favorable to the plaintiff, the court makes the following recitation of facts. Flying J operates travel plazas, each comprising a restaurant, convenience store, and fueling and vehicle maintenance stations. Flying J hired Jones in December 2005 as a Convenience Store Manager at the Hope Hull, Alabama Travel Plaza. Her supervisor was Butch Jacobs ("Jacobs"). On March 30, 2006, Jones's attorney notified Flying J by letter that Jones had been sexually harassed by Jacobs. In the same letter, Jones reported that three Flying J managers – Jacobs, Keith Staples

("Staples"), and Kerry Lake ("Lake") – had visited a strip club while out of town for company training. At the relevant times, Lake was District Manager and was Staples's boss. Staples was District Accounting Manager, but was the acting manager in charge of the Hope Hull Travel Plaza when Lake was out of the district.

Flying J immediately began its investigation of Jones's complaint. From the date of her complaint, Jones did not work with Jacobs; however, he contacted her several times about the investigation. She reported this contact to Flying J through counsel on April 6, 2006. Pursuant to instructions from Flying J's Human Resources department, Staples and Lake terminated Jacobs for sexual harassment on April 9, 2006.

During this time period, Staples was in charge of operations at the Hope Hull Travel Plaza but was having daily conversations with Lake. Also during this time period, Flying J was conducting an investigation of Jones's report of sexual harassment, which involved interviews with at least 11 employees at the Hope Hull Travel Plaza on April 18 and 19, 2006. Through counsel Jones reported to Flying J on April 20, 2006, that she felt she was being retaliated against for reporting Jacobs's harassment. In consultation with the Human Resources Director, Flying J's corporate counsel, and Lake, Staples fired Jones on April 21, 2006, claiming that the reason for termination was her excessive absenteeism. A more detailed timeline than the parties provided is necessary here:

| Monday, April 10 | Jones worked an unscheduled day because the travel plaza needed help after Jacobs's termination. |

| | |
|---|---|
| Tuesday, April 11 | Jones worked a scheduled day. |
| Wednesday, April 12 | Jones asked for the day off due to her mother-in-law's biopsy. Flying J granted her the day off because she had worked on Monday. |
| Thursday, April 13 | Jones arrived to work about an hour and a half late. Flying J knew that Jones may not come in to work at all depending on her mother-in-law's condition. |
| Friday, April 14 | Jones called in sick; she thought her endometriosis was causing her to feel ill. |
| Saturday, April 15 | Jones was not scheduled to work. |
| Sunday, April 16 | Jones was not scheduled to work. |
| Monday, April 17 | Jones was not scheduled to work. At a medical appointment, Jones discovered she was pregnant and the pregnancy was in jeopardy; she was told to stay off her feet. Jones called Flying J to report her condition and to state that she would be absent for a few days, perhaps a week, and that she was waiting on test results. |
| Tuesday, April 18 | Jones was out sick, but she called Flying J to report the situation was the same. |
| Wednesday, April 19 | Jones was out sick, but she called Flying J with a report of her condition. |
| Thursday, April 20 | Jones was out sick. |
| Friday, April 21 | Staples fired Jones over the telephone at 9:15 a.m. Jones told Staples that she was absent due to her medical condition, about which Flying J was aware, and that she could provide a written medical excuse. |

Full time, salaried employees – like Jones – were eligible for sick leave with pay. Flying J's written absenteeism policy allowed absences due to emergencies and illness. When an absence of more than five consecutive days is caused by illness or injury, the employee is required to complete an application for a leave of absence, in order to have sick leave determined and approved. The policy provided a performance evaluation and disciplinary action if an employee incurred excessive absences. Because Jones had not been absent for more than five consecutive days, she had not completed an application for a leave of absence. Jones did not receive sick leave with pay, nor was she given a performance evaluation or other disciplinary action before her termination.

Jones filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") on May 17, 2006. (Doc. # 1-2.) The EEOC issued a Right to Sue letter to Jones on February 22, 2007. (Doc. # 1-3.) Jones filed her Complaint (Doc. # 1) on March 28, 2007. Flying J filed its summary judgment motion (Doc. # 18), to which Jones responded (Doc. # 49). Flying J filed a reply brief (Doc. # 24). Having been fully briefed, the motion is ripe for review.

## II. JURISDICTION AND VENUE

Because the plaintiff's claims arise under Title VII, the court exercises subject matter jurisdiction over these claims pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1343 (civil rights). The parties do not contest personal jurisdiction or venue, and the court finds adequate allegations supporting both.

### III. STANDARD OF REVIEW

Summary judgment should be granted only "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Under Rule 56, the moving party "always bears the initial responsibility of informing the district court of the basis for its motion." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[T]he court must view all evidence and make all reasonable inferences in favor of the party opposing summary judgment." *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995). The movant can meet this burden by presenting evidence showing there is no genuine issue of material fact, or by showing the non-moving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex Corp.*, 477 U.S. at 322-23.

Once the moving party has met its burden, "an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). To avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). A genuine factual dispute exists if a "'reasonable jury could return a verdict for the non-moving party.'" *Damon v. Fleming Supermarkets of Fla., Inc.,* 196 F.3d 1354, 1358 (11th Cir. 1999) (quoting *United*

*States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991)). After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

## IV. DISCUSSION

*A.     Count One – Sexual Harassment*

Title VII makes it unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). In order to establish a sexual harassment claim under Title VII, a plaintiff must show the following elements:

> (1) that she belongs to a protected group; (2) that she has been subjected to unwelcome sexual harassment; (3) that the harassment was based on her sex; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) that a basis for holding the employer liable exists.

*Hulsey v. Pride Rests., LLC*, 367 F.3d 1238, 1244 (11th Cir. 2004). For the purpose of summary judgment, Flying J does not argue that Jones cannot show the first four elements of a prima facie case. Instead, Flying J simply invokes the *Faragher/Ellerth* [1] affirmative defense (*i.e.*, challenges the fifth element), concluding that it cannot be held liable even if

---

[1] *Faragher v. City of Boca Raton,* 524 U.S. 775 (1998); *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998).

6

Jones can establish the other elements because it took prompt remedial action in response to Jones's complaint of sexual harassment. (Def.'s Br. 5.)

Under the *Faragher/Ellerth* affirmative defense an employer can avoid liability for a hostile work environment claim if (1) it "exercised reasonable care to prevent and correct promptly any sexually harassing behavior" and (2) the employee "unreasonably failed to take advantage of any preventative or corrective opportunities [the employer] provided." *Faragher*, 524 U.S. at 807. The defendant bears the burden of establishing both elements. *Nurse "BE" v. Columbia Palms W. Hosp. Ltd. P'ship*, 490 F.3d 1302, 1309 (11th Cir. 2007). An employer meets its duty if it takes reasonable and prompt corrective action upon notice of the harassment. *Id.* at 1311-12.

The court notes that Jones "does not oppose the Defendant's motion in connection with Count One of her Complaint, which states a claim for hostile work environment." (Pl.'s Br. 1 n.1.) In light of Jones's abandonment of her hostile work environment claim, and upon careful review of the evidence and argument presented by Flying J, which indisputably establishes Flying J's prompt remedial action to Jones's complaint of sexual harassment by Jacobs, the court concludes that Flying J is entitled to summary judgment on the sexual harassment claim.

## B.   *Count Two – Retaliation*

Jones claims that Flying J fired her in retaliation because she complained about sexual harassment by Jacobs. "Retaliation is a separate violation of Title VII . . . [and Jones] need

not prove the underlying claim of discrimination . . . so long as she had a reasonable good faith belief that the discrimination existed." *Gupta v. Fla. Bd. of Regents*, 212 F.3d 571, 586 (11th Cir. 2000) (internal quotation marks and citations omitted). Flying J does not dispute that Jones had a reasonable good faith belief that she was sexually harassed.

Flying J does challenge, however, the causation element of Jones's prima facie case. To state a prima facie claim of retaliation, "a plaintiff must show that (1) she engaged in statutorily protected expression; (2) she suffered an adverse employment action; and (3) the adverse action was causally related to the protected expression." *Weeks v. Harden Mfg. Corp.*, 291 F.3d 1307, 1311 (11th Cir. 2002). The plaintiff establishes the causal link if she produces evidence that the decisionmaker was aware of the protected conduct or that there was close temporal proximity between the protected activity and the adverse employment action. *Higdon v. Jackson*, 393 F.3d 1211, 1220 (11th Cir. 2004).

Flying J asserts that Staples was not aware of Jones's sexual harassment complaints against Jacobs and concludes that this claim must be dismissed because Jones cannot present sworn evidence to rebut Staples's lack of knowledge. This argument fails. At the outset, the court notes that the causal link element should be construed broadly; the "plaintiff merely has to prove that the protected activity and the negative employment action are not completely unrelated." *Goldsmith v. Bagby Elevator Co., Inc.*, 513 F.3d 1261, 1278 (11th Cir. 2008) (internal quotation marks and citations omitted).

Additionally, Flying J fails to recognize that providing direct evidence of Staples's

knowledge is not the only way to establish the causal link. A plaintiff may rely on circumstantial evidence to establish causation, *i.e.*, by showing close temporal proximity between the protected activity and the adverse action. *See Gary v. Hale*, 212 Fed. Appx. 952, 958 n.3 (11th Cir. 2007). Here, the temporal proximity cannot be any closer – Jones's most recent complaint (through counsel) was the day before she was fired. Even if Jones's first complaint on March 20, 2006, is considered the date of the protected activity, only one month elapsed before the termination. Considering that "[a]t a minimum, [a plaintiff] must show that the adverse act followed the protected conduct," *Griffin v. GTE Fla., Inc.*, 182 F.3d 1279, 1284 (11th Cir. 1999), evidence of temporal proximity of one day – or even one month – is sufficient to create a genuine issue of material fact as to the causation element of the prima facie case of retaliation.

Moreover, even if Jones could not show close temporal proximity between her complaints and her termination, the evidence of Staples's role at the travel plaza and the pattern of communications among Flying J's management is more than sufficient for the court to draw the inference that Jones's complaints and subsequent termination "are not completely unrelated." *Goldsmith*, 513 F.3d at 1278 (internal quotation marks and citations omitted). Staples's claims that he was not aware of Jones's sexual harassment complaint, or of the reason for Jacobs's termination, or of the investigation that was being carried out under his nose raise serious credibility issues prime for resolution by a jury. The defendant has failed to show that there is no genuine issue as to any material fact on the retaliation

9

claim; thus, the issue of Staples's knowledge and credibility will be a question for the jury to decide.

## V.  CONCLUSION

For the reasons set forth above, it is hereby ORDERED that Defendant Flying J's Motion for Summary Judgment (Doc. # 18) is GRANTED in parted and DENIED in part:

1. It is GRANTED with respect to Count I; the claim of sexual harassment is DISMISSED with prejudice;

2. It is DENIED with respect to Count II; the claim of retaliation remains.

The parties shall prepare for trial.

DONE this 16th day of May, 2008.

                                                     /s/  W.  Keith Watkins
                                    UNITED STATES DISTRICT JUDGE

A copy of this checklist is available at the website for the USCA, 11th Circuit at www.ca11.uscourts.gov
Effective on April 9, 2006, the new fee to file an appeal will increase from $255.00 to $455.00.

# CIVIL APPEALS JURISDICTION CHECKLIST

**1.  Appealable Orders:** Courts of Appeals have jurisdiction conferred and strictly limited by statute:

(a)  **Appeals from final orders pursuant to 28 U.S.C. § 1291:** Only final orders and judgments of district courts, or final orders of bankruptcy courts which have been appealed to and fully resolved by a district court under 28 U.S.C.§ 158, generally are appealable. A final decision is one that "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." Pitney Bowes, Inc. v. Mestre, 701 F.2d 1 365, 1 368 ( 11th Ci r. 1 983). A magistrate judge's report and recommendation is not final and appealable until judgment thereon is entered by a district court judge. 28 U.S.C. § 636(c).

(b)  **In cases involving multiple parties or multiple claims,** a judgment as to fewer than all parties or all claims is not a final, appealable decision unless the district court has certified the judgment for immediate review under Fed.R.Civ.P. 54(b). Williams v. Bishop, 732 F.2d 885, 885- 86 (11th Cir. 1984). A judg ment which resolves all issues except matters, such as attorneys' fees and costs, that are collateral to the merits, is immediately appealable. Budinich v. Becton Dickinson & Co., 486 U.S.196, 201, 108 S.Ct. 1717, 1721-22, 100 L .Ed.2d 178 (1988); LaChance v. Duffy's Draft House, Inc., 146 F.3d 832, 837 (11th Cir. 1998).

(c)  **Appeals pursuant to 28 U.S.C. § 1292(a):** Appeals are permitted from orders "granting, continuing, modifying, refusing or dissolving injunctions or refusing to dissolve or modify injunctions . . ." and from "[i]nterlocutory decrees . . . determining the rights and liabilities of parties to admiralty cases in which appeals from final decrees are allowed." Interlocutory appeals from orders denying temporary restraining orders are not permitted.

(d)  **Appeals pursuant to 28 U.S.C. § 1292(b) and Fed.R.App.P. 5**: The certification specified in 28 U.S.C. § 1292(b) must be obtained before a petition for permission to appeal is filed in the Court of Appeals. The district court's denial of a motion for certification is not itself appealable.

(e)  **Appeals pursuant to judicially created exceptions to the finality rule:** Limited exceptions are discussed in cases including, but not limited to: Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 546, 69S.Ct. 1221, 1225-26, 93 L.Ed. 1528 (1949); Atlantic Fed. Sav. & Loan Ass'n v. Blythe Eastman Paine Webber, Inc., 890 F.2d 371, 376 (11th Cir. 1989); Gillespie v. United States Steel Corp., 379 U.S. 148, 157, 85 S.Ct. 308, 312, 13 L.Ed.2d 199 (1964).

Rev.: 4/04

2.  **Time for Filing**: The timely filing of a notice of appeal is mandatory and jurisdictional. Rinaldo v. Corbett, 256 F.3d 1276, 1278 (11th Cir. 2001). In civil cases, Fed.R.App.P. 4(a) and (c) set the following time limits:

    (a)  **Fed.R.App.P. 4(a)(1):** A notice of appeal in compliance with the requirements set forth in Fed.R.App.P. 3 must be filed in the district court within 30 days after the entry of the order or judgment appealed from. However, if the United States or an officer or agency thereof is a party, the notice of appeal must be filed in the district court within 60 days after such entry. **THE NOTICE MUST BE RECEIVED AND FILED IN THE DISTRICT COURT NO LATER THAN THE LAST DAY OF THE APPEAL PERIOD – no additional days are provided for mailing.** Special filing provisions for inmates are discussed below.

    (b)  **Fed.R.App.P. 4(a)(3):** "If one party timely files a notice of appeal, any other party may file a notice of appeal within 14 days after the date when the first notice was filed, or within the time otherwise prescribed by this Rule 4(a), whichever period ends later."

    (c)  **Fed.R.App.P. 4(a)(4):** If any party makes a timely motion in the district court under the Federal Rules of Civil Procedure of a type specified in this rule, the time for appeal for all parties runs from the date of entry of the order disposing of the last such timely filed motion.

    (d)  **Fed.R.App.P. 4(a)(5) and 4(a)(6):** Under certain limited circumstances, the district court may extend the time to file a notice of appeal. Under Rule 4(a)(5), the time may be extended if a motion for an extension is filed within 30 days after expiration of the time otherwise provided to file a notice of appeal, upon a showing of excusable neglect or good cause. Under Rule 4(a)(6), the time may be extended if the district court finds upon motion that a party did not timely receive notice of the entry of the judgment or order, and that no party would be prejudiced by an extension.

    (e)  **Fed.R.App.P. 4(c):** If an inmate confined to an institution files a notice of appeal in either a civil case or a criminal case, the notice of appeal is timely if it is deposited in the institution's internal mail system on or before the last day for filing. Timely filing may be shown by a declaration in compliance with 28 U.S.C. § 1746 or a notarized statement, either of which must set forth the date of deposit and state that first-class postage has been prepaid.

3.  **Format of the notice of appeal:** Form 1, Appendix of Forms to the Federal Rules of Appellate Procedure, is a suitable format. See also Fed.R.App.P. 3(c). A pro se notice of appeal must be signed by the appellant.

4.  **Effect of a notice of appeal:** A district court loses jurisdiction (authority) to act after the filing of a timely notice of appeal, except for actions in aid of appellate jurisdiction or to rule on a timely motion of the type specified in Fed.R.App.P. 4(a)(4).