UNITED STATES DISTRICT COURT
IN THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| MILISSA JONES, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| versus | * | CASE NO: 2:07 CV273-WKW |
| | * | |
| FLYING J, INC. | * | |
| | * | |
| Defendant. | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

### DEFENDANT'S TRIAL BRIEF

**NOW INTO COURT,** through undersigned counsel, comes Defendant, Flying J Inc. ("Flying J"), and respectfully submits this Trial Brief to aid the Court in its analysis of the pertinent legal issues involved in the upcoming trial of this matter.

### I.   INTRODUCTION

Plaintiff, Milissa Jones, filed this lawsuit against her former employer, Flying J. Plaintiff claimed that her immediate supervisor, General Manager Butch Jacobs, sexually harassed her and that Flying J terminated her employment because her lawyer, Adam Morel, complained to the company on her behalf. Flying J filed a motion for summary judgment on both claims. Pursuant to this Court's order granting Flying J's motion in part, Plaintiff's claim of sexual harassment has been dismissed. Plaintiff's retaliation claim is the only claim that remains to be tried on July 28, 2008.

Judging from the language of Plaintiff's contentions contained in the Order on Pretrial Hearing, it appears as though Plaintiff is seeking damages solely for her termination. Plaintiff's contentions state, "Melissa Jones contends the Defendant unlawfully retaliated against her for

reporting sexual harassment <u>by terminating her</u> on April 21, 2006." (Docket 36, p. 3) (emphasis added). Despite this statement, Plaintiff's contentions describe the events prior to her termination and state that she complained to Flying J's General Counsel that she was "being retaliated against by store employees after having reported Jacobs' conduct." *Id* at p. 4. Out of an abundance of caution, and to the extent Plaintiff seeks to assert this additional claim of retaliation at trial, Flying J will address both forms of alleged retaliation in this Trial Brief.

## II. FACTUAL BACKGROUND

Flying J operates travel plazas that cater to professional and non-professional travelers. Each travel plaza has a restaurant and convenience store, and also provides fuel and vehicle maintenance. Flying J hired Plaintiff on December 8, 2005, to work as a Convenience Store Manager at its Hope Hull, Alabama Travel Plaza. At that time, she received a Flying J employee handbook, entitled Retail/Interstate Operations Employee Handbook. She read and understood its content, and signed an acknowledgement that she had read and would agree to abide by Flying J's policies and procedures.

On March 30, 2006, Plaintiff's lawyer, Adam Morel, sent a letter of complaint to Flying J's General Counsel's Office on Plaintiff's behalf, claiming that Mr. Jacobs has sexually harassed her. Flying J immediately investigated Plaintiff's complaint. On April 10, 2006, Flying J fired Mr. Jacobs for the stated reason of misrepresentation during an investigation.

Following Mr. Jacobs' termination, Plaintiff remained employed with Flying J as the Convenience Store Manager. In the subsequent weeks, however, Plaintiff did not work her scheduled shift or missed her shift entirely on several occasions. When Plaintiff called in to give notice that she would not work on Tuesday, April 18, 2006, as scheduled, she indicated that she did not know when she would be able to return to work.

During the relevant time period, Flying J's District Accounting Manager Keith Staples was present at the Travel Plaza while Flying J was arranging for Mr. Jacob's replacement. During this time Mr. Staples had the authority to discipline employees, up to and including termination of employment. Plaintiff missed her scheduled work days from April 13, 2006 through April 21, 2006, (was not scheduled to work on April 15-17, 2006), and according to Mr. Staples, Plaintiff told him she did not know whether she could work the following week or not. Therefore, Mr. Staples terminated Plaintiff for excessive absenteeism. At the time he terminated Plaintiff, no one, not even the Plaintiff, had ever informed Staples that Plaintiff had complained to management that she had been sexually harassed. Mr. Staples knew that an investigation of some kind was being conducted, but he did not know that it was the result of any sexual harassment complaint that Plaintiff had made.

## III.   LAW AND ARGUMENT REGARDING PLAINTIFF'S RETALIATION CLAIMS

Retaliation claims under Title VII are governed by the three-step *McDonnell Douglas* test. *Baldwin v. Blue Cross/Blue Shield of Alabama,* 480 F.3d 1287, (11th Cir.2007); *see also McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802-04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Under this test, Plaintiff must first prove that (1) she was engaged in protected activity, (2) she suffered adverse employment action, and (3) she suffered the adverse action because of the protected activity. *Gupta v. Florida Bd. Of Regents,* 212 F.3d 571, 587 (11th Cir. 2000).

If Plaintiff establishes a *prima facie* case, the burden shifts to the employer to state a legitimate, non-retaliatory reason for its decision. *Baldwin, supra* at 1308, citing *McDonnell Douglas Corp., supra.* The employer need only produce evidence of its reason for discharge, but need not prove the reason was the true reason, as the burden of proof or persuasion remains with the plaintiff at all times. *Tex. Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 255, 101 S.Ct.

1089, 67 L.Ed.2d 207 (1981). After the employer states its reason, the burden of production shifts back to the employee to demonstrate that the employer's reason is actually a pretext for retaliation. *Id*.

  a.  **Plaintiff's Termination Claim**

  Plaintiff, by her counsel, did complain that Jacobs sexually harassed her (element one) and she did suffer adverse action by being discharged (element two). However, Plaintiff cannot prove that she was discharged <u>because</u> her counsel had complained on her behalf (the third element). Keith Staples, the one who decided to discharge Plaintiff, did not know that Plaintiff had ever complained of sexual harassment and thus he could not have discharged her because she had complained.

  Plaintiff may suggest that the close temporal proximity between her complaint of harassment and her termination prove a causal connection. In the absence of any other evidence of causation, close temporal proximity between a protected activity and an adverse employment action is insufficient to establish causation. *Wascura v. City of South Miami,* 257 F.3d 1238, 1248 (11th Cir.2001). There is no causal connection, however, if the person who made the decision to terminate the employee learned of the protected activity after he discharged the employee. *Brungart v. BellSouth Telecommunications, Inc., Inc.,* 237 F.3d 791, 799 (11th Cir.2000).

  In *Brungart,* a former employee sued her former employer under the Family Medical Leave Act alleging that the employer terminated her in retaliation for exercising her rights under the FMLA. The manager (the employee's supervisor's supervisor) terminated the employee the day before her leave was scheduled to begin. The district court granted the employer's summary judgment. On appeal, the Eleventh Circuit affirmed this ruling and held that the decision-

maker's unrefuted testimony that he knew nothing of the protected activity when he fired the employee was enough to destroy the inference of causation based on temporal proximity. In reaching its decision, the Court considered the impact of temporal proximity and stated that "[t]o say that temporal proximity 'implies' knowledge is simply to say that we should assume such knowledge even though there is no evidence other than temporal proximity to cast any doubt on the decision maker's denial of knowledge." *Id* at 799-800. The Court also rejected Plaintiff's attempt to impute knowledge to the corporation where other corporate officials or supervisors (but not the decision maker) had knowledge of her protected activity. *Id* at 800.

In *Clover v. Total System Services, Inc.,* 176 F.3d 1346 (11th Cir.1999), a former employee brought a retaliatory discharge action against her former employer under Title VII. The jury returned a verdict in favor of the employee. The district court denied the employer's motion for judgment as a matter of law. On appeal, the Eleventh Circuit reversed the district court's decision because the employee failed to demonstrate the requisite causal connection between the protected activity and her termination.

The plaintiff in *Clover* participated as a witness in an investigation of sexual harassment. She was terminated by a decision maker who unequivocally denied being aware of the employee's participation in the protected conduct. The employee argued that the jury could infer that the decision maker knew of her protected activity because other people in the company knew and the decision maker was friends with the alleged harasser. The Court rejected this argument. The Court found the decision maker's lack of knowledge of the employee's protected conduct at the time her terminated her fatal to the employee's claim. The Court stated that although the employee's evidence raises the inference that the decision maker was aware of the protected conduct, "that evidence is insufficient for any reasonable jury to find that [the decision

{L0037499.1}                                          5

maker] was aware of [the employee's] participation in the investigation when he decided to terminate her." *Id* at 1355. The Court continued that even though the evidence indicated <u>at most</u> that the decision maker <u>could have been told</u> of the protected activity, that was not the same as actually having been told. Such "pure speculation" was not sufficient to prove causation. *Id* at 1356.

 Like the plaintiffs in *Brungart* and *Clover,* Plaintiff in the instant case alleges that she was discharged in retaliation for exercising her protected rights. Like the plaintiffs in *Brungart* and *Clover*, Plaintiff has no evidence to dispute the decision maker's unrebutted testimony that he had no knowledge of Plaintiff's protected activity when he terminated her for excessive absenteeism. And like the plaintiffs *Brungart* and *Clover*, this Court should find that Plaintiff has failed to prove a causal nexus sufficient to meet her *prima facie* burden of proof on her retaliation claim.

 Plaintiff also challenges the reason given for her termination - - arguing that the reason is pretextual. But unless and until Plaintiff can establish a *prima facie* case, the reason for her termination is irrelevant. *Gupta v. Florida Bd. of Regents,* 212 F.3d 571 (11th Cir.2000). It is Flying J's position that Plaintiff cannot establish a *prima facie* case, so, as a matter of law, the court must not even consider the reason for her termination.

 Assuming for purposes of this Trial Brief that Plaintiff could prove her *prima facie* case, which Flying J disputes, only then does the burden of production shift to Flying J to articulate a legitimate, non-retaliatory reason for its decision to terminate Plaintiff. *Baldwin, supra* at 1308, citing *McDonnell Douglas Corp., supra.* Flying J has articulated such a reason -- excessive absenteeism. Specifically, Staples terminated Plaintiff's employment because she was not coming to work and refused to tell Staples when she would be able to return to work. This

reason is a legitimate, nondiscriminatory reason for her discharge. *Chenault v. Ameripride Linen and Apparel Services,* 188 Fed.Appx. 974 (11th Cir. 2006); *Rojas v. Florida,* 285 F.3d 1339, 1342 (11th Cir. 2002).

When the employer meets its burden of production, the presumption of retaliation disappears, and the plaintiff must demonstrate that the employer's reasons are pretext for retaliation (that is unworthy of belief). *Wilson v. B/E Aerospace, Inc.,* 376 F.3d 1079, 1087 (11th Cir.2004); *see also Tex. Dep't of Cmty. Aff. v. Burdine,* 450 U.S. 248, 255-56, 101 S.Ct. 1089, 1094-95, 67 L.Ed.2d 207 (1981). The relevant inquiry on the issue of pretext is whether the employer's proffered reason was a cover-up for a discriminatory action. *Rojas, supra.,* at 1342.

In this instance, Plaintiff has not produced and, indeed, cannot produce any evidence to show Flying J's reason for her termination is a pretext for an intent to retaliate against her for complaining of sexual harassment. As discussed above, Keith Staples terminated Plaintiff because she was not coming to work. He had no knowledge of Plaintiff's complaint, and therefore, his reason for terminating her could not have been cover-up for a discriminatory motive. Moreover, the evidence shows that following Plaintiff's complaint, Flying J investigated the matter and took prompt corrective action. Flying J accepted Plaintiff's complaints and terminated Jacobs' employment, thus, giving Flying J no reason to retaliate against Plaintiff. Nor can Plaintiff prove disparate treatment: Plaintiff cannot show that other employees missed less time and were allowed to keep their jobs.

    b.    **Plaintiff's Claim of Co-worker Retaliation**

Based on Plaintiff's Contentions in the Pretrial Order, it is unclear whether Plaintiff is asserting a claim that her co-workers retaliated against her because she complained of sexual

harassment. Out of an abundance of caution, Flying J addresses these claim and will show that such a claim is without merit.

To succeed on this claim, Plaintiff must again prove the *prima facie* elements of this claim. *Gupta, supra.* Specifically, Plaintiff cannot prove the second and third elements of her claim; namely that that she experienced an adverse employment action and that such perceived retaliation was causally related to her complaint of sexual harassment.

Regarding the second element of Plaintiff's *prima facie* case, Plaintiff cannot prove that she suffered an adverse employment action. In order to sustain a Title VII retaliation claim, an employee must prove that "a reasonable employee would have found the challenged action materially adverse, which in this context means it might well have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53, 126 S.Ct. 2405, 2415, 165 L.Ed.2d 345 (2006). However, Plaintiff was not dissuaded from complaining about her co-workers so by definition, the complained of conduct would not have been materially adverse. *Sykes v. Pennsylvania State Police*, 2007 WL 141064, *7 (E.D. Pa. Jan. 17, 2007).

Further, Plaintiff seems to contend that some of her co-workers retaliated against her following her complaint against Butch Jacobs. She describes instances where co-workers were mean and rude to her. The co-workers' alleged actions toward Plaintiff are not substantial and is the sort of "petty slight" that is not actionable under *Burlington Northern. Id* at 2415-16.

Even assuming *arguendo,* that Plaintiff could show that she suffered an adverse employment action, Plaintiff's claim still fails as she cannot establish causation for this particular claim. Specifically, Plaintiff cannot prove that her co-workers retaliated against her in response to her complaint about Butch Jacobs.

### c. The Court, Not the Jury, Decides Back Pay and Front Pay.

Based on Plaintiff's Proposed Jury Instructions, it appears that Plaintiff seeks to have the jury determine whether she is entitled to and the amount of back pay and front pay. The Eleventh Circuit clearly recognizes that front pay is an equitable remedy to be decided by the Court - - not a jury. *E.E.O.C. v. W&O, Inc.*, 213 F.3d 600, 618 (11th Cir. 2000) ("front pay is an issue for the *trial judge*, and not the jury, to decide") (emphasis in original). Moreover, it is widely accepted that like front pay, back pay, too, is an equitable remedy to be decided by the Court. *Broadnax v. City of New Haven*, 415 F.3d 265, 271 (2d Cir. 2005) ("[b]ecause a lost wages award - - whether in the form of back pay or front pay - - is an equitable remedy, a party is generally not entitled to a jury determination on the question") (emphasis removed); *Lutz v. Glendale Union High School*, 403 F.3d 1061, 1067-69 (9th Cir. 2005) (back pay is an equitable remedy to be decided by the judge, not the jury); *Johnson v. Ga. Highway Express, Inc.*, 417 f.3d 1122, 1125 (5th Cir. 1969) ("[t]he demand for back pay is not in the nature of a claim for damages, but rather is an integral part of the statutory equitable remedy, to be determined through the exercise of the court's discretion, and not by a jury"); *Spencer v. Wal-Mart Stores, Inc.*, 469 F.3d 311, 316 (3d Cir. 2006) ("back pay remains an equitable remedy to be awarded within the discretion of the court").

Respectfully submitted,

 s/Olivia S. Regard
Olivia S. Regard (La. Bar No. 27114)
Jones, Walker, Waechter, Poitevent,
  Carrère & Denègre, L.L.P.
500 Dover Boulevard, Ste. 120
Lafayette, Louisiana  70503
Telephone:  (337) 406-5613
Facsimile:  (337) 406-5620
Email:  oregard@joneswalker.com

    and

Robert B. Worley, Jr. (La. Bar No. 17212)
Jones, Walker, Waechter, Poitevent,
  Carrère & Denègre, L.L.P.
201 St. Charles Avenue, 47th Floor
New Orleans, Louisiana  70170-5100
Telephone:  (504) 582-8000
Facsimile:   (504) 582-8015
Email: rworley@joneswalker.com

and


Carole G. Miller
Audrey Dupont
Maynard Cooper & Gale, P.C.
1901 Sixth Avenue North
2400 AmSouth/Harbert Plaza
Birmingham, Alabama 35203
Telephone: (205) 254-1096
Facsimile: (205) 254-1999
Email: cmiller@maynardcooper.com

***Counsel for Defendant, Flying J Inc.***

## CERTIFICATE OF SERVICE

    I hereby certify that on this 21st day of July, 2008, a copy of the foregoing pleading was filed electronically with the Clerk of Court using the CM/ECF system.  Notice of filing will be sent to all counsel of record by operation of the court's electronic filing system.

    s/Olivia S. Regard